IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| WESTLAKE ROYAL STONE, LLC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STONE CREEK PRODUCTS, LLC ) <br> d/b/a AFFINITY STONE ) <br> ) <br> Defendant. | Case No. <br><br> **JURY TRIAL DEMANDED** <br> **EQUITABLE RELIEF** <br> **REQUESTED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Westlake Royal Stone, LLC ("Westlake"), for its Complaint against Stone Creek Products, LLC d/b/a Affinity Stone ("Affinity Stone"), alleges as follows:

**NATURE AND BASIS OF ACTION**

1. This is an action for patent infringement under the Patent Act, 35 U.S.C. § 271, arising from Affinity Stone's unauthorized manufacture, use, offer for sale, and sale of products that infringe Westlake's U.S. Patent Nos. 9,903,124, 10,557,273, and 10,329,775 (the "Asserted Patents"), which cover innovations related to mortarless stone veneer wall panels.

**THE PARTIES**

2. Westlake is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 2801 Post Oak Boulevard, Suite 600, Houston, Texas, 77056.

3. Affinity Stone is a limited liability company organized and existing under the laws of Illinois with its principal place of business at 366 East State Road 133, Arthur, Illinois 61911.

## JURISDICTION AND VENUE

4. This is an action for patent infringement under 35 U.S.C. § 271. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5. The Court has personal jurisdiction over Affinity Stone because Affinity Stone is an Illinois limited liability company with its principal place of business in this District.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400(b) because Affinity Stone has committed acts of infringement and has a regular and established place of business in this District.

## FACTS

7. Westlake is a leading manufacturer of architectural stone and brick veneer products used in residential and commercial construction.

8. Among other products, Westlake manufactures and sells a collection of innovative mortarless stone veneer wall siding products which it offers under its Versetta Stone® brand. The Versetta Stone® wall panels replicate the appearance and texture of authentic stone while providing the benefits of modern panelized systems, including improved drainage, durability, and ease of installation.

9. Westlake's Versetta Stone® wall panels feature a simplified tongue-and-groove installation and moisture management through an integrated rainscreen.

10. Traditionally stone siding is installed using lath and mortar, which is a labor-intensive process. Before the patented inventions, various attempts were made to achieve a stone siding appearance without the need for lath and mortar, but significant technical challenges persisted. Early mortarless solutions were often inadequate: plastic or polymer-based products frequently appeared artificial and lacked the authentic texture of real stone, while heavier cement-

based panels were difficult to secure to a wall with a system that was both simple and durable. Moisture management was a further problem. Fastening a cement-based panel directly against a wall risked trapping water that inevitably penetrates the surface, leading to potential rot and mold. A typical tongue-and-groove system could exacerbate this issue by creating tight horizontal joints that trap moisture between courses.

11. The patented inventions were the first to overcome these hurdles. The claimed panels employ a cast concrete body that achieves an authentic stone look and a mounting element that is partially embedded in the concrete and projects from the panel, allowing the panel to be secured to a wall using nails or screws. The panel further includes integrated tongue-and-groove features that enable an installer to quickly and securely connect one course of siding to the next.

12. Critically, the inventions provide weep holes in the mounting element positioned to allow water to drain from the groove formed between the panel body and the projecting portion of the mounting element, preventing water from becoming trapped between panels. In addition, protrusions on the mounting element create an air gap behind installed panels, permitting water to flow down the back side of the stone siding—across multiple successive courses—and drain from the bottom of the wall. This combination of a carpenter-friendly mechanical installation with integrated defenses against water intrusion was a substantial innovation that made mortarless stone veneer a viable and durable cladding solution.

13. The Asserted Patents claim these inventions and improvements, which are embodied in Westlake's Versetta Stone® products.

**The Asserted Patents**

14. U.S. Patent No. 9,903,124, (the "'124 Patent") entitled "Prefabricated Wall Panel with Tongue and Groove Construction," was duly and legally issued on February 27, 2018, by the United States Patent and Trademark Office. A copy of the '124 Patent is attached to this Complaint as **Exhibit A** and incorporated herein by reference.

15. The '124 Patent claims are valid and enforceable.

16. U.S. Patent No. 10,557,273, (the "'273 Patent") entitled "Prefabricated Wall Panel with Tongue and Groove Construction," was duly and legally issued on February 11, 2020, by the United States Patent and Trademark Office. A copy of the '273 Patent is attached to this Complaint as **Exhibit B** and incorporated herein by reference.

17. The '273 Patent claims are valid and enforceable.

18. The '124 Patent and '273 Patent relate generally to prefabricated wall panels featuring a tongue and groove interconnection system and a mounting element with integrated weep holes, which together enable secure, mortarless installation and provide effective water drainage to prevent moisture accumulation behind the panels.

19. U.S. Patent No. 10,329,775, (the "775 Patent") entitled "Method of Forming a Wall Pantel," was duly issued on June 25, 2019, by the United States Patent and Trademark Office. A copy of the '775 Patent is attached to this Complaint as **Exhibit C** and incorporated herein by reference.

20. The '775 Patent claims are valid and enforceable.

21. The '775 Patent relates generally to a method of manufacturing prefabricated wall panels that utilize a tongue and groove system for panel interconnection and incorporate a mounting element with weep holes, allowing for secure installation and effective drainage of water from behind the panels.

22. Westlake is the owner by assignment of the Asserted Patents and holds all rights to sue for past, present, and future infringement thereof.

**Affinity Stone's Infringing Products and Knowledge of the Asserted Patents**

23. Affinity Stone manufactures and sells mortarless stone veneer panels that directly compete with Westlake's Versetta Stone® products.

24. Affinity Stone currently offers two versions of mortarless stone veneer panels, the Ridge Cut Series and the Cliff Ledge Series (hereafter, the "Accused Products").

25. Like Westlake's Versetta Stone® panels, the Accused Products imitate the appearance and texture of real stone while incorporating air gaps to manage water drainage.

26. Also like Westlake's Versetta Stone® panels, the Accused Products feature an interlocking tongue and groove system for simple installation.

27. Indeed, Affinity Stone specifically markets the Accused Products as featuring a simple installation with a "precision-engineered tongue and groove system" and an "integrated air gap behind the panels [which] helps prevent moisture from getting trapped in the wall space." *See* **Exhibit D**, Affinity Stone 2024 Product Catalog, at 4; **Exhibit E,** Screenshot of Affinity Stone website at https://www.affinitystone.com/stone-veneer-installation (last accessed October 16, 2025).

28. Affinity Stone has known of the existence and materiality of the Asserted Patents since at least May 29, 2020, because, *inter alia*, Affinity Stone listed each of the Asserted Patents on its Information Disclosure Form ("IDS") that it filed with the United States Patent and Trademark Office ("USPTO") on May 29, 2020, with respect to Affinity Stone's prosecution of the application which issued as U.S. Patent No. 10,927,552. U.S. Patent No. 10,927,552 generally pertains to veneer panel systems with adaptable mounting and corner configurations.

29. Affinity Stone also identified each of the Asserted Patents on its IDS that it filed with the USPTO on January 15, 2021, with respect to Affinity Stone's prosecution of the application which issued as U.S. Patent No. 11,346,114. U.S. Patent No. 11,346,114 generally pertains to veneer panels with adaptable mounting and corner configurations that allow on-site trimming and versatile installation on building surfaces.

30. On information and belief, Affinity Stone reviewed and analyzed the Asserted Patents before including them in the IDSs filed in connection with its patent applications.

31. Affinity Stone listed the Asserted Patents in its IDSs because, after reviewing the patents, it understood their relevance to its own stone veneer products, and determined they were material for consideration by the USPTO.

32. By citing the Asserted Patents to the United States Patent and Trade Office, Affinity Stone acknowledged the material relevance of the Asserted Patents to its own veneer panel products.

33. Affinity Stone's citation of the Asserted Patents in its own patent prosecutions demonstrates that Affinity Stone was aware of the patents, understood their relevance to its stone veneer panel technology, and had actual knowledge of Westlake's rights.

34. Affinity Stone's decision to proceed with the development and sale of its infringing products despite its knowledge of the Asserted Patents was objectively unreasonable and undertaken with reckless disregard for Westlake's patent rights.

**COUNT ONE**
**Infringement of U.S. Patent No. 9,903,124**

35. Westlake repeats and realleges each of the preceding paragraphs as if fully set forth herein.

36. Claim 1 of the '124 Patent recites:

a wall panel comprising: a body comprising a[t] least one design element; a mounting element comprising a first segment embedded within an interior portion of the body and a second segment projecting to an exterior of the body; and a groove formed between a portion of the body and the second segment of the mounting element, the groove being inset relative to a first edge of the body and the mounting element comprises weep holes configured to allow water to drain from the groove.

37.     The Accused Products include a body comprising at least one design element, as shown in the annotated photographs of a representative Affinity Stone panel below:



38.     The Accused Products include a mounting element comprising a first segment embedded within an interior portion of the body and a second segment projecting to an exterior portion of the body, as shown in the annotated photographs of a representative Affinity Stone panel below.



39.     Each of the Accused Products has a groove positioned between a portion of the body and the second segment of the mounting element, and the groove is inset relative to a first edge of the body, as shown in the annotated photographs of a representative Affinity Stone panel below:



40.     The Accused Products include weep holes configured to allow water to drain from the groove, as shown in the annotated photographs of a representative Affinity Stone panel below:



41.     Affinity Stone specifically markets this feature of the Accused Products in multiple places across its website:



See https://www.affinitystone.com/about/why-choose-us

Every piece of Affinity manufactured stone is crafted with a half-inch rain screen, which allows any water that would get behind it to drain out the bottom. That's why you only need a single layer of vapor barrier and you'll be good!

See https://www.affinitystone.com/stone-veneer-installation/faqs

10



*See* https://www.affinitystone.com/blog/material-info/3-costly-problems-with-fake-stone-for-walls-how-to-avoid-them

42. By making, using, selling, offering to sell, and/or importing the Accused Products, Affinity Stone has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '124 Patent, in violation of 35 U.S.C. § 271.

43. As a direct and proximate result of Affinity Stone's infringement, Westlake has suffered and continues to suffer damages and irreparable harm.

44. Westlake is without an adequate remedy at law and will be irreparably harmed if the Court does not enter an order enjoining Affinity Stone from infringing the '124 Patent.

45. Affinity Stone's infringement has been, and continues to be, knowing, intentional, and willful. Affinity Stone acted with knowledge of the '124 Patent despite an objectively high likelihood that its actions constituted infringement of at least one valid and enforceable claim of the '124 Patent, and Affinity Stone knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '124 Patent.

**COUNT TWO**
**Infringement of U.S. Patent No. 10,557,273**

46. Westlake repeats and realleges each of the preceding paragraphs as if fully set forth herein.

47. Claim 1 of the '273 Patent recites:

a wall panel comprising: a concrete body comprising a design element and a rear surface; a mounting element projecting from the concrete body; a groove positioned between the mounting element and the rear surface of the concrete body; and at least one hole that allows water to drain from the groove.

48. The Accused Products include a concrete body comprising a design element and a rear surface, as shown in the annotated photographs of a representative Affinity Stone panel below:



49. The Accused Products further include a mounting element that projects from the concrete body, as evidenced by the physical structure of the panels and Affinity Stone's own product documentation which identifies a "fastening strip" projecting from the concrete body.



50. The mounting element projecting a concrete body in the Accused Products is further demonstrated in the annotated photographs of a representative Affinity Stone panel below:



51. The Accused Products have a groove positioned between the mounting element and the rear surface of the concrete body, as shown in Affinity Stone's own product documentation (above) and in the annotated photographs of a representative Affinity Stone panel below:



52. The Accused Products include at least one hole in the mounting element that allows water to drain from the groove, as specifically advertised by Affinity Stone as a "built-in drainage plane" or "rain screen" that enables water to drain out the bottom of the installed panel. **Ex ["why choose use" page].**

53. Affinity Stone markets and instructs customers that the Accused Products are designed to address water entrapment by providing an air gap and drainage holes, which allow water to flow down the rear surface of the concrete body and exit through the holes at the bottom of the wall, thereby practicing the claimed invention of the '273 Patent. [**Ex X, "installation faqs page**]

54. By making, using, selling, offering to sell, and/or importing the Accused Products, Affinity Stone has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '273 Patent, in violation of 35 U.S.C. § 271.

55. As a direct and proximate result of Affinity Stone's infringement, Westlake has suffered and continues to suffer damages and irreparable harm.

56. Westlake is without an adequate remedy at law and will be irreparably harmed if the Court does not enter an order enjoining Affinity Stone from infringing the '273 Patent.

57. Affinity Stone's infringement has been, and continues to be knowing, intentional, and willful. Affinity Stone acted with knowledge of the '273 Patent despite an objectively high likelihood that its actions constituted infringement of at least one valid and enforceable claim of the '273 Patent, and Affinity Stone knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '273 Patent.

**COUNT THREE**
**Infringement of US Patent No. 10,329,775**

58. Claim 1 of the '775 Patent recites:

A method of forming a wall panel, comprising: positioning a first portion of a mounting element within a mold cavity of a mold; adding casting material into the mold cavity so as to embed the first portion of a mounting element in the casting material; forming a groove along an edge of the casting material, the groove defined by an edge of the casting material and a second portion of the mounting element extending from the edge of the casting material, wherein the second portion of the mounting element comprises a weep hole configured to allow water to drain from the groove; and allowing the casting material to set and form the wall panel.

59. On information and belief, Affinity Stone's method of manufacturing the Accused Products necessarily includes the step of positioning a first portion of a mounting element within

a mold cavity, as evidenced by the structure of the Accused Products, which include a mounting element embedded within the panel body and projecting therefrom, as shown below:



60. Affinity Stone identifies the use of molds during the manufacturing process on its website:

## Why Choose Us?

Choosing the right stone veneer panels shouldn't come down to guesswork. At Affinity Stone, we've engineered a product that solves the common problems contractors and homeowners face – from time-consuming installs to panels that crack, shift, or fall off entirely. Our screw-on panels are quick to install, weather-ready, and built to stay attached for decades, not just a few seasons.

Every panel is proudly manufactured in the USA using real stone molds for a natural, high-end look you can trust. Whether you're accenting a pole barn, wrapping porch columns, upgrading your home's wainscoting, or adding an interior feature wall, Affinity Stone gives you the kind of reliability, speed, and finish that other products just can't match.

*See* https://www.affinitystone.com/about/why-choose-us

61. On information and belief, Affinity Stone's method includes adding casting material, such as concrete, into the mold cavity so as to embed the first portion of the mounting element in the casting material, as shown by the physical characteristics of the Accused Products.

62. Affinity stone advertises the use of concrete as the casting material that is cast in its molds on its website:

## What Is Stone Veneer Made Of?

Manufactured stone veneer is a material that creates the look of stone without the difficulty of using the raw material. So, if it isn't made of real stones, what is it exactly? **One of the other most common questions we get is, "What is stone veneer made of?"** That question has multiple answers. Affinity Stone manufactured veneer is made of lightweight, colored concrete arranged in panels. This allows the panels to be truly beautiful, with gorgeous stone veneer colors and stunning patterns. From a practical standpoint, manufactured stone is lighter and can be installed in far less time than natural stone using just screws!

Since Affinity Stone is a man-made concrete product, it is considered manufactured stone veneer. However, some types of stone veneer are made of quarried stones simply carved and cut down to the thickness of a veneer. While using natural stone is preferable for some contractors and homeowners, others prefer the modern look or practical advantages of manufactured stone veneer.

*See* https://www.affinitystone.com/blog/material-info/what-is-manufactured-stone-veneer

63. On information and belief, Affinity Stone's method further includes forming a groove along an edge of the casting material, where the groove is defined by the edge of the casting material and a second portion of the mounting element that extends from the edge of the casting material. The Accused Products exhibit such a groove, and the mounting element projects from the panel in a manner consistent with the claimed method, as shown in the annotated photograph of the Accused Products below:



64. On information and belief, the second portion of the mounting element in Affinity Stone's Accused Products comprises at least one weep hole configured to allow water to drain from the groove, as evidenced by the presence of drainage holes in the mounting element of the Accused Products.

65. On information and belief, Affinity Stone's method includes allowing the casting material to set and form the wall panel, as is standard in the manufacture of precast concrete panels and as evidenced by the finished structure of the Accused Products.

66. Based on the structure and features of the Accused Products, and on information and belief, there is no commercially reasonable or technically feasible way to manufacture the Accused Products without practicing each and every step of at least claim 1 of the '775 Patent.

67. By practicing the methods claimed in the '775 Patent in the manufacture of the Accused Products, Affinity Stone has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '775 Patent, in violation of 35 U.S.C. § 271.

68. As a direct and proximate result of Affinity Stone's infringement, Westlake has suffered and continues to suffer damages and irreparable harm.

69. Westlake is without an adequate remedy at law and will be irreparably harmed if the Court does not enter an order enjoining Affinity Stone from infringing the '775 Patent.

70. Affinity Stone's infringement has been, and continues to be knowing, intentional, and willful. Affinity Stone acted with knowledge of the '775 Patent despite an objectively high likelihood that its actions constituted infringement of at least one valid and enforceable claim of the '775 Patent, and Affinity Stone knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '775 Patent.

WHEREFORE, Westlake requests that the Court enter judgment against Affinity Stone and enter an order:

A. Finding that Affinity Stone has infringed U.S. Patent No. 9,903,124 under 35 U.S.C. § 271(a);

B. Finding that Affinity Stone has infringed U.S. Patent No. 10,557,273 under 35 U.S.C. § 271(a);

C. Finding that Affinity Stone has infringed U.S. Patent No. 10,329,775 under 35 U.S.C. § 271(a);

D. Finding that Affinity Stone's infringement has been willful;

E. Enjoining Affinity Stone and its respective officers, agents, servants, employees, and attorneys, and all of those persons in active concert or participation with any of them from directly or indirectly infringing any claim of U.S. Patent No. 9,903,124;

F. Enjoining Affinity Stone and its respective officers, agents, servants, employees, and attorneys, and all of those persons in active concert or participation with any of them from directly or indirectly infringing any claim of U.S. Patent No. 10,557,273;

G. Enjoining Affinity Stone and its respective officers, agents, servants, employees, and attorneys, and all of those persons in active concert or participation with any of them from directly or indirectly infringing any claim of U.S. Patent No. 10,329,775;

H. Awarding compensatory damages to Plaintiffs under 35 U.S.C. § 284;

I. Trebling the damage award under 35 U.S.C. § 284;

J. Awarding Plaintiffs pre-judgment and post-judgment interest;

K. Finding this to be an exceptional case under 35 U.S.C. § 285 and awarding Westlake its reasonable attorneys' fees and expenses in this action;

L. Awarding Westlake its costs in this action; and

M. Awarding such other and further relief as the Court deems just and proper.

Dated October 16, 2025.

Respectfully submitted,

By: /s/ *Julie C. Scheipeter*
B. Scott Eidson (*Lead Counsel*)
(Admission Pending)
Missouri Bar No. 57757
Julie C. Scheipeter
IL Bar No. 6315426
Zachary T. Buchheit (Admission Pending)
Missouri Bar No. 75528
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Phone: 314-863-0800
Email: scott.eidson@stinson.com
Email: julie.scheipeter@stinson.com
Email: zachary.buchheit@stinson.com